UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60869-CIV-COHN/SELTZER

JAHMEL BINION,

    Plaintiff,

vs.

SHAQUILLE O'NEAL, et al.,

    Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS, AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

**THIS CAUSE** is before the Court upon two Motions to Dismiss filed by the Defendants in this case. Defendant Shaquille O'Neal's motion can be found at Docket Entry 31. Defendant Mine O' Mine Inc.'s motion can be found at Docket Entry 37. Plaintiff has moved to file a Second Amended Complaint in response to Mine O' Mine's Motion to Dismiss. [See DE 43]. The Court has considered these Motions and related filings [DE 34, 42, 44], and is otherwise advised in the premises.

For the reasons that follow, the Court will **GRANT in part and DENY in part** the Motions to Dismiss. This dismissal is without prejudice as to certain of Mine O' Mine's claims, but Plaintiff's Proposed Second Amended Complaint does not remedy the relevant deficiencies. Accordingly, Plaintiff's Motion for leave to file this proposed Second Amended Complaint will be **DENIED**, but Plaintiff may file a revised Second Amended Complaint consistent with this Order.

**I.     Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Id. at 556.

**II.    Plaintiff's Claims**

In April of 2014, Defendant Shaquille O'Neal ("O'Neal") posted a picture of Plaintiff Jahmel Binion ("Binion") on his Instagram and Twitter accounts. [DE 27 at 2.] This was no ordinary picture. Plaintiff Binion suffers from ectodermal dysplasia. [Id.] According to Binion's operative complaint, this has left him with a "disfigured appearance" due to "abnormalities in the hair, nails, sweat glands, and teeth." [Id.] O'Neal altered Binion's photograph by adding a side-by-side shot of O'Neal himself, contorting his facial features and "attempting to make a similar face." [Id.] The picture

2

bore a caption: "SMILE PEOPLE."  Binion attaches a copy of the offending photograph to his First Amended Complaint.  [Id. at 15.]

Shaquille O'Neal is, of course, no ordinary man.  Rather, he is an NBA megastar with 8.6 Million Twitter followers.  [See id.]  He was the first celebrity to have a verified Twitter account.  [Id. at 3.]  His tweets generate substantial interest in certain quarters.  The tweet at issue in this lawsuit, for example, received at least 17,703 "likes" and generated 735 comments.

The Amended Complaint includes little about Defendant Mine O' Mine.  Binion alleges that Mine O'Mine "is a corporation owned by Defendant O'Neal" and that it "owns the exclusive right to sublicense O'Neal's name, image, and likeness and to register, exploit and protect the word 'Shaq' and Shaq formative marks."  [Id. at 1.]  Binion also alleges that O'Neal acted on Mine O' Mine's behalf when he posted Binion's picture.  [Id. at 2.]

For this conduct, Binion has sued Defendants under five different theories, separated into discrete counts.  In Count I, Binion sues Defendants for Invasion of Privacy.  [Id. at 4–5.]   In Count II, Binion sues Defendants for Intentional Infliction of Emotional Distress.  [Id. at 5.]  In Count III, Binion sues Defendants for Defamation.  [Id. at 6.] In Count IV, Binion sues Defendants for Negligence.  [Id. at 7.]  And in Count V, Binion sues Defendants for Unjust Enrichment.  [Id. at 7–8.]  Binion's Invasion of Privacy counts proceed under four different theories that the Court must analyze separately: (1) Appropriation; (2) False Light; (3) Intrusion Upon Seclusion; (4) and Public Disclosure of Private Facts.

### III.     Discussion

Binion states viable claims against Defendant O'Neal for Intentional Infliction of Emotional Distress, Invasion of Privacy under the Appropriation theory, and Unjust Enrichment.  Binion's other claims lack merit and shall be dismissed with prejudice. Further, Binion fails to plead sufficient facts to render Mine O' Mine liable for any of O'Neal's alleged conduct.  Therefore, Plaintiff's claims against Mine O' Mine for even Unjust Enrichment, Appropriation, and Intentional Infliction of Emotional Distress will be dismissed.  Dismissal of these claims against Mine O' Mine will be without prejudice to Plaintiff's ability to amend, however.

#### A.     Michigan law applies.

The Court will apply Michigan law to Binion's claims.  "The law is well settled that federal courts sitting in diversity cases must apply the forum state's conflict of law rules in order to resolve substantive legal issues."  Johnson v. Occidental Fire and Cas. Co. of North Carolina, 954 F.2d 1581, 1583 (11th Cir. 1992).  Since Bishop v. Florida Specialty Paint Co., Florida has followed the "significant relationships test" in resolving conflicts of law issues.  389 So. 2d 999, 1001 (Fla. 1980).  Accordingly, the Court should apply the law of the state that "has the most significant relationship to the occurrence [of] and the parties [to]" a tort claim.  Id.  In conducting this analysis, the Court considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Id.  These factors should be evaluated "according to their relative importance with respect to the particular issue."  Id.

4

Here, Binion is a private person who lives in Michigan.  The injuries he alleges that he suffered therefore center around that state.  Moreover, the Court concludes that Michigan is where the relationship between the parties is centered.  Binion had no relationship with O'Neal before the events at issue in this suit.  O'Neal created the relationship when he posted Binion's picture in the allegedly offending Twitter and Instagram posts.  Against this, the Court weighs the fact that O'Neal is a resident of the Southern District of Florida, and O'Neal's act of making the social media posts likely occurred here.

In evaluating these factors in light of their relative importance to Binion's claims, the Court concludes that Michigan bears the most significant relationship to this case.  According to the Amended Complaint, Binion has been a passive actor in this affair.  O'Neal's actions in Florida have allegedly hurt Binion in Michigan.  Binion is entitled to the protection of his home state's laws, especially in cases such as this that concern matters of privacy and emotional disturbance.

Finally, the Court notes that neither Plaintiff nor Defendants take a position on which state's law the Court should apply.  Defendant O'Neal explicitly argues that "[t]his Court need not conduct a formal choice of law analysis to determine whether Florida or Michigan law applies as the law governing each of the four [sic] claims is analogous in all respects material" to his Motion to Dismiss.  [DE 31 at 3.]

With this established, the Court turns to Binion's claims.

### B. Binion states a claim for Intentional Infliction of Emotional Distress against Defendant O'Neal.

 "Michigan is one of only two states whose highest court has not dispositively addressed the establishment and contours of the tort of intentional infliction of emotional

5

distress." Melson v. Botas, 497 Mich. 1037, 1037 (2015) (J. Markman, dissenting). Nevertheless, the Court of Appeals of Michigan recognizes the tort, and the Supreme Court has affirmed its decisions to that effect. Id. at 1037; see also Melson v. Botas, Dkt. No. 315014, 2014 WL 2867197, at *1 (Mich. App. June 19, 2014). "In order to establish intentional or reckless infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." Lewis v. LeGrow, 670 N.W.2d 675, 689 (Mich. App. 2003) (quotation marks omitted). In his Motion to Dismiss, O'Neal defends against the claim by arguing that Binion "does not allege extreme and outrageous conduct." [DE 31 at 13.] The Court therefore discusses this element in detail below.

A defendant's conduct will trigger liability for Intentional Infliction of Emotional Distress only "when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Lewis, 670 N.W. 2d at 689 (quotation marks omitted). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are not enough." Id.

There is perhaps some tension in this definition. Tolerance is a low bar, and civilized societies often pride themselves on a willingness to tolerate that which the community as a whole finds indecent. Fortunately, Michigan's Court of Appeals has provided some further guidance: "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average

6

member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id.

Further, the relative status of the parties matters. Michigan courts have heavily relied upon the Restatement (Second) of Torts in determining the bounds of an Intentional Infliction of Emotional Distress claim. See Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 908, 909 (Mich. 1985). According to the Restatement commentary, "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatement § 46 cmt. e. Further, conduct may become extreme and outrageous due to "the actor's knowledge that the other person is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Id. at cmt. f. Simply put, society finds it especially reprehensible for the strong to pick on the weak.

Moreover, whether conduct rises to the level of "extreme and outrageous" behavior is a jury question. A case is inappropriate for summary disposition if "reasonable jurors could find that a reasonable person would conclude that plaintiff would suffer emotional distress" from a defendant's conduct. Id.; accord Melson, 2014 WL 2867197, at *1 (reversing grant of summary judgment because "reasonable minds could differ as to the extreme and outrageous nature of the alleged conduct"). Thus, Defendant's assertion that "[w]hether a defendant's conduct is outrageous and utterly intolerable in a civilized community is a matter of law for the Court" is not correct, at least under Michigan law. [DE 31 at 13.]

7

Here, Binion states a claim for Intentional Infliction of Emotional Distress against Defendant O'Neal. He alleges that he suffered severe emotional distress because of the social media posts at issue, and that O'Neal "knew or should have known that emotional distress would likely result to plaintiff." [DE 27 at 5.] Further, taken in the light most favorable to Binion, the conduct described in the Amended Complaint is sufficiently "extreme and outrageous" to trigger liability for Intentional Infliction of Emotional Distress. O'Neal is a celebrity and a person of considerable influence and esteem. The Court cannot conclude as a matter of law that his decision to mock Binion's appearance before an audience of millions is insufficient to trigger liability for Intentional Infliction of Emotional Distress under Michigan Law.

### C. Binion states a claim against Defendant O'Neal for Appropriation.

Binion also states a claim for Invasion of Privacy under an Appropriation theory. "The invasion of privacy cause of action for appropriation is founded upon 'the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others.'" Battaglieri v. Mackinac Center for Pub. Policy, 261 Mich. App. 296, 300 (2004) (quoting Restatement (Second) of Torts § 652C cmt. a). It exists whenever "'the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit.'" Id. at 301. To prevail on an Appropriation claim, a plaintiff need not allege that a defendant intruded upon any private matters or that defendant made a false statement. "Instead, any unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another." Id. The Michigan Court of Appeals has described this theory of liability as "far reaching." Id.

O'Neal argues that Binion's Appropriation claim fails because Binion lacks a significant pecuniary or commercial interest in his identity.  [See DE 31 at 5].  The extent to which this matters is not altogether clear.  At least one unpublished opinion of the Michigan Court of Appeals has held that a trial court may consider "whether plaintiff's image has significant commercial value" in determining a defendant's liability for the tort.  Arnold v. Treadwell, Dkt. No. 283093, 2009 WL 2136909, at *4 (Mich. Ct. App. July 16, 2009).  But the court's published opinions contain no such requirement.  See Battaglieri, 261 Mich. App. at 301.  And later unpublished opinions backtrack.  For example, in Asmi v. Nasir, Dkt. No. 316208, 2014 WL 5690503 (Mich. Ct. App. Nov. 4, 2014), the Michigan Court of Appeals held that "although [an Appropriation claim] protects the 'pecuniary interest in the commercial exploitation' of the plaintiff's identity, it appears that a defendant does not need to make 'commercial' use thereof, but rather merely some use from which the defendant receives some kind of benefit."  Id., at *10.

Furthermore, the Restatement (Second) of Torts—upon which the Michigan courts rely—states that the tort "is not limited to commercial appropriation" and "applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one."  Restatement (Second) of Torts § 652C, at cmt. b.  Somewhat troublingly, O'Neal cites this Restatement section to support his position that Appropriation "occurs when a person uses another's name or likeness without permission, to one's own *pecuniary* benefit."  [See DE 31 at 5 (emphasis added).]

Even if the tort of Appropriation under Michigan law does require a plaintiff to demonstrate a significant commercial or pecuniary interest in his identity, Binion's case still survives Defendant O'Neal's Motion to Dismiss.  "[A] plaintiff need not be a national celebrity to demonstrate significant commercial value." Arnold, 2009 WL 2136909, at *5.  Further, the mere act of misappropriating the plaintiff's identity may be sufficient evidence of commercial value to survive even a motion for summary judgment.  Id.

Here, Binion states a claim for Invasion of Privacy by Appropriation.  He alleges that O'Neal took his image, lightly edited it, and used it as content on his widely viewed social media accounts, all without Binion's authorization.  Binion further alleges that Defendant O'Neal cultivates his social media presence "as critical elements in the brand promotion of 'Shaq.'" [DE 27 at 2.]  To the extent Michigan law requires Plaintiff to allege that Defendant O'Neal appropriated his likeness for some commercial purpose, these allegations satisfy the requirement.

### D. Binion states a claim for Unjust Enrichment against O'Neal.

Finally, Binion states a valid claim against O'Neal for Unjust Enrichment.  Under Michigan law, "unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another." Tkachik v. Mandeville, 790 N.W.2d 260, 266 (Mich. 2010) (quotation marks omitted).  To prevail on the claim, a plaintiff must establish (1) receipt of a benefit by the defendant from the plaintiff, and (2) inequity resulting from the benefit's retention. Morris Pumps v. Centerline Piping, Inc., 729 N.W.2d 898, 904 (Mich. Ct. App. 2006).   "A 'benefit' for the purpose of an unjust enrichment claim is any form of advantage that has a measurable value."  42 C.J.S. Implied Contracts § 9.  As unjust enrichment is an equitable remedy, a plaintiff may not

prevail upon the claim if he has an adequate remedy at law. But the claim may be pleaded in the alternative.

Here, construed in the light most favorable to Plaintiff, the Amended Complaint alleges that Defendant O'Neal took a photograph belonging to Plaintiff and used it without Plaintiff's permission as content on his social media accounts. Under these circumstances, retaining the benefit of the photograph would be inequitable. Plaintiff's Amended Complaint therefore sufficiently alleges a claim for Unjust Enrichment.

In his Motion, O'Neal argues that Binion fails to state a claim for Unjust Enrichment because "there is no allegation, nor could there be, that Plaintiff directly conferred any benefit on O'Neal." [DE 31 at 19.] But under Michigan law, a plaintiff does not need to show that he "directly conferred" such a benefit to the defendant. See Morris Pumps, 729 N.W.2d at 901–02 (affirming a grant of summary judgment to plaintiff supplier when defendant construction company used—without permission or payment—building materials inadvertently left at a construction site).

### E. Binion's claims for Negligence, Defamation, False Light, Intrusion Upon Seclusion, and Public Disclosure of Private Facts will be dismissed with prejudice.

Binion's other claims fail. The Court addresses each in turn.

Binion's Negligence claim fails for two reasons. First, the Amended Complaint alleges that Defendant O'Neal *intentionally* used his picture in the manner described, and therefore falls outside the ambit of negligence liability. Further, Plaintiff alleges that Defendants violated a duty "to [P]laintiff to not subject him to ridicule" [DE 27 at 7] and "the general duty to conform to the legal standard of reasonable conduct in light of the apparent risk" that their actions would "foreseeably result in emotional harm and injury to the person being mocked and ridiculed." [Id.] Thus, while Binion styles this claim as

11

one for mere "negligence," it is actually for Negligent Infliction of Emotional Distress. Michigan courts "decline to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." Duran v. Detroit News, Inc., 504 N.W.2d 715, 719–20 (Mich. Ct. App. 1993).

Binion's Defamation and False Light claims fail because the Amended Complaint does not allege that O'Neal made anything approaching a false statement about him. The gravamen of a false light tort is that "a defendant's publication attributed to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." Battaglieri, 680 N.W.2d at 920.  Similarly, Defamation requires that a defendant make "a false and defamatory statement concerning the plaintiff." Kevorkian v. Am. Med. Ass'n, 602 N.W.2d 233, 237 (Mich. Ct. App. 1999).  Here, Binion argues that "[f]rom the nature of the pictures posted, one could reasonably infer that the defendant sought to portray the plaintiff as a moron."  [DE 34 at 21.]  The Court disagrees.  The Amended Complaint alleges no more than that Defendant O'Neal posted an accurate picture of Plaintiff's face, aside a photograph of O'Neal trying to make a similar face.  In the absence of an allegedly false statement, Plaintiff's claims for Defamation and False Light Invasion of Privacy must be dismissed.

Binion's claim for Intrusion Upon Seclusion also fails.  To state a claim for Intrusion Upon Seclusion, a Plaintiff must plead "(1) the existence of a secret and private subject matter; (2) a right possessed by the plaintiff to keep that subject matter private; and (3) the obtaining of information about that subject matter through some method objectionable to a reasonable man." Lewis v. LeGrow, 670 N.W.2d 675, 687

(Mich. Ct. App. 2003).  "An action for intrusion upon seclusion focuses on the manner in which the information was obtained." Id.  But Binion alleges next to nothing about how O'Neal came upon his photograph.  Further, the parties agree in their briefing that Binon published the photograph to the internet through his publicly available Instagram account.  [See DE 34 at 20.]  Consequently, Binion has failed to plausibly allege that Defendant O'Neal intruded upon Plaintiff's privacy by obtaining the photograph.

Finally, the Court turns to Binion's claim for Public Disclosure of Private Facts.  Under Michigan law, "to prove invasion of privacy through public disclosure of private facts, a plaintiff must show (1) the disclosure of information (2) that is highly offensive to a reasonable person and (3) that is of no legitimate concern to the public." Doe v. Henry Ford Health Sys., 865 N.W.2d 915, 919 (Mich. Ct. App. 2014) (quotation marks omitted).  Further, "the information revealed must relate to the individual's private as opposed to public life." Id.  "Liability will not be imposed for giving publicity to matters that are already of public record or otherwise open to the public." Id.

Binion's claim fails for this last reason.  The Amended Complaint alleges only that Defendants publicized a picture of Binion's face.  It does not allege that Binion's image is some sort of private aspect of his life.  Moreover, Binion concedes in his motion papers that he made the photograph publicly available on his Instagram account.  [DE 34 at 13.]

> **F.      Binion's allegations are insufficient to render Defendant Mine O'Mine liable, even for claims validly stated against O'Neal.**

As set forth above, Binion states claims against Defendant O'Neal for Unjust Enrichment, Invasion of Privacy through Appropriation, and Intentional Infliction of Emotional Distress.  Binion also attempts to state claims against Defendant Mine O'

Mine under these theories. But these efforts fall short. Moreover, Plaintiff's proposed Second Amended Complaint does not correct the problems with the allegations in the operative pleading. The Court will therefore dismiss Plaintiff's claims against Mine O' Mine without prejudice, deny Plaintiff's pending Motion to Amend, but allow Plaintiff some additional time to file a Second Amended Complaint consistent with this Order.

The Amended Complaint contains scant well-pleaded facts concerning Mine O' Mine. Plaintiff alleges that Defendant O'Neal owns Mine O' Mine, and that Mine O' Mine "owns the exclusive right to sublicense O'Neal's name, image, and likeness and to register, exploit and protect" certain trademarks. [DE 27 at 1.] But as to Mine O' Mine's role in this episode, Plaintiff alleges only that O'Neal acted "on behalf of" Mine O' Mine when he made the social media posts at the heart of this suit. [Id. at 2.] Binion therefore seeks to hold Mine O' Mine liable for acts O'Neal purportedly undertook as its agent.

But this agency relationship is not a well-pleaded allegation entitled to a presumption of truth upon a motion to dismiss. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The unadorned allegation of an agency relationship is such a threadbare legal conclusion. See, e.g., Donnelly v. Option One Mortg. Corp., Civ. Action No. 11-7019, 2014 WL 1266209, at *7 (D. N.J. Mar. 26, 2014); Air Tropiques, Sprl v. Northern & Western Ins. Co., Ltd., Civ. Action No. H-13-1438, 2014 WL 1323054, at *7 (S.D. Tex. Mar. 31, 2014). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

14

Plaintiff's proposed Second Amended Complaint does not address this deficiency.  The proposed amendment merely adds allegations that Mine O' Mine "benefits from Defendant O'Neal's self-promotional activities on social media," including the allegedly tortious conduct at issue in this case.  [DE 43-1 at 7.]  But the fact that a third party benefits from torts committed by one person against another does not render that third party liable.

### IV.      Conclusion

For the foregoing reasons, the Court will dismiss several of Binion's claims against O'Neal, and all of Binion's claims against Mine O' Mine.  The Court permits Plaintiff to proceed against O'Neal on his theories of Intentional Infliction of Emotional Distress, Invasion of Privacy through Appropriation, and Unjust Enrichment.  Binion's other claims—for Defamation, Negligence, and other Invasion of Privacy theories—are dismissed with prejudice as to both O'Neal and Mine O' Mine.

However, the Court will permit Binion a brief opportunity to amend his complaint to expand on the agency relationship between O'Neal and Mine O' Mine to support his efforts to hold Mine O'Mine liable for O'Neal's conduct.  Therefore, the Court dismisses Plaintiff's claims against Mine O' Mine for Appropriation, Intentional Infliction of Emotional Distress, and Unjust Enrichment without prejudice.

It is thereupon **ORDERED and ADJUDGED** as follows:

1. Defendants' Motions to Dismiss [DE 31 & 37] are **GRANTED in part and DENIED in part** as follows:

    a. The Court dismisses with prejudice Plaintiff's claims against O'Neal and Mine O' Mine for Defamation, Negligence, False Light, Intrusion Upon Seclusion, and Public Disclosure of Private Facts.

    b.  The Court dismisses without prejudice Plaintiff's claims against Mine O' Mine for Intentional Infliction of Emotional Distress, Appropriation, and Unjust Enrichment.  Plaintiff may file a Second Amended Complaint in an effort to restate these claims against Mine O' Mine on or before January 13, 2016.

    c.  Plaintiff's Amended Complaint states claims against Defendant O'Neal for Intentional Infliction of Emotional Distress, Appropriation, and Unjust Enrichment.

  2.  Plaintiff's pending Motion to Amend Complaint [DE 43] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of January, 2016.

*[Signature]*
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.